The Honorable Barbara J. Rothstein

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WESTBORO CONDOMINIUM ASSOCIATION, a Washington Non-Profit Corporation,

Plaintiff,

v.

COUNTRY CASUALTY INSURANCE COMPANY, et al.,

Defendants.

NO. 2:21-cv-685

**ORDER: (1) DENYING PLAINTIFF'S MOTION FOR SANCTIONS; (2) DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; and (3) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

## I.   INTRODUCTION

This matter comes before the Court on cross Motions for Summary Judgment, filed by Plaintiff Westboro Condominium Association (the "Association") and Defendants Country Casualty Insurance Company and Country Mutual Insurance Company (collectively, "Country" or "Defendants"). Dkt. Nos. 23 & 26. The Association seeks a declaratory judgment on its claim on a Country all-risk insurance policy, for hidden water damage to the framing and sheathing at the Westboro Condominiums. Country seeks dismissal of the Association's claims based on the "known risk" affirmative defense, asserting that the Association knew of the damage when it

ORDER

- 1

purchased its policy. After Country filed its motion two weeks past the dispositive motions deadline, Plaintiff also filed a Motion for Sanctions, asking the Court to strike Country's motion. Dkt. No. 28. Having reviewed the parties' briefs, the supporting declarations and exhibits, and the relevant caselaw, the Court finds and rules as follows.

## II.  BACKGROUND

This lawsuit concerns a claim the Westboro Condominium Association submitted in January 2020 on its all-risk insurance policy, issued by Country for the period August 2018-August 2019. The claim is for repairs for water damage to framing and sheathing at the Westboro Condominiums buildings. The Westboro Condominiums, built in 1980, "consists of seventeen (17) two-story, wood framed, residential buildings, with a total of 68 units, located in Federal Way, Washington. . . . The exterior wall consists of [cedar] siding, over weather resistive barrier ("WRB") over ThermoPly structural sheathing and pressboard sheathing, and framing. The framing is hidden from view by the sheathing, the sheathing is hidden from view by the WRB and the WRB is hidden from view by the siding." Compl. ¶ 2.1; Pl.'s Mot. at 5 (citing Eggert Decl.).

In December 2019, the Association commissioned an intrusive investigation into the buildings' condition, involving opening the layers of the envelope down to the framing. Eleven of the twelve openings performed in the investigation revealed hidden water damage to the buildings' framing and sheathing. Eggert Decl., ¶ 8. After the Association submitted its claim to Country (and other insurers), the parties conducted a joint investigation in June 2020, which confirmed that there was water damage to the framing and sheathing throughout the Westboro Condominiums. The cause of the damage, according to Plaintiff's expert, was intrusion of water resulting from a combination of inadequate construction and wind-drive rain. Eggert Decl., ¶ 22.

ORDER

- 2

Country denied the Association's claim in December 2020, leading to the filing of this lawsuit.

ORDER - 3

### III. DISCUSSION

#### A. *Plaintiff's Motion for Sanctions*

In May 2022, the parties jointly moved for an extension of several pretrial deadlines, including the dispositive motions deadline. The Court granted that motion in part, but explicitly directed the parties to "[n]ote that the Court has set a Dispositive Motions Deadline of August 8, 2022, not August 22, 2022 as the parties requested." Order at 2, Dkt. No. 22. The Association filed its Motion for Summary Judgment on August 8, 2022. The Defendant, however, did not file its Motion until August 22, 2022.

Three days later, Plaintiff filed a motion seeking sanctions for Defendants' late filing, asking the Court to strike Defendants' motion. As Plaintiff argues, Court-ordered deadlines are "firm" and not to be modified without a showing of good cause. The "good cause" that Defendants claim is that the parties had in fact requested an August 22 deadline, and it simply erred in assuming the Court's order adopted that date.

Generally, a calendaring error is not "good cause" that justifies missing a deadline. In this case, however, the Court declines to strike Defendants' late-filed Motion for Summary Judgment. Plaintiff has not claimed it has suffered any prejudice from the late filing. Nor does Plaintiff claim that the Defendants acted in bad faith or gained any particular advantage in filing the motion late, and it appears this is its first missed deadline in this case. Furthermore, the interests of judicial economy are served by having the Court consider and resolve any potentially dispositive issues of law before trial. Plaintiff's Motion for Sanctions is therefore denied.

#### B. *Motions for Summary Judgment: Standard*

"Summary judgment is appropriate when, viewing the evidence in the light most favorable

ORDER
- 4

to the nonmoving party, there is no genuine dispute as to any material fact" and the movant is entitled to judgment as a matter of law. *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)); Fed. R. Civ. P. 56(a). "The moving party bears the initial burden of identifying portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020). "If the moving party meets this burden, the opposing party must then set out specific facts showing a genuine issue for trial to defeat the motion." *Id*. If the evidence proffered by the opposing party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (citations and quotation marks omitted).

### C. Defendants' Motion for Summary Judgment

By their Motion for Summary Judgment, Defendants move the Court for a ruling that Plaintiff's lawsuit is barred by the "known loss" doctrine, also referred to as the "fortuity principle." The notion is that "an insured cannot collect on an insurance claim for a loss that the insured subjectively knew would occur at the time the insurance was purchased." *MKB Constructors v. Am. Zurich Ins. Co.*, 49 F. Supp. 3d 814, 838 (W.D. Wash. 2014) (citing *Hillhaven Props. Ltd. v. Sellen Constr. Co., Inc.,* 133 Wn. 2d 751 (1997)). Typically, "whether a particular occurrence was expected by the insured before the insurance coverage was obtained ... is a question of fact." *Pub. Util. Dist. No. 1 of Klickitat Cnty. v. Int'l Ins. Co.,* 124 Wn.2d 789 (1994); *see also Frank Coluccio Constr. Co.,* 150 P.3d at 1156 ("The test for fortuity is a subjective, not objective, one, and involves questions of fact.").

ORDER

- 5

Defendants rely on several documents in support of their claim that the Association was aware of damage to the framing and sheathing at the time it purchased the Country policy in August 2018. For example, Country cites a 2009 "reserve study," which the Association commissioned for the purpose of determining amounts it might need to budget for building repairs. *See* Syhre Decl., Ex. A. According to that study, the "Building Siding" had a remaining useful life of one year; the study recommended imposing a special assessment on unit owners of over $1 million a year for the next two years for those repairs. *Id*. Correspondence from the Association to unit owners following that study suggests that the Association intended to repair (and thus presumably had some awareness of) "any rotted framework," and "damage to the framing" caused by water draining behind the siding "in several areas." Syhre Decl., Ex. C. Defendants also rely on a 2018 reserve study, which again recommended replacement of the wood siding. Syhre Decl., Ex. B. This evidence supports Country's claim that in August 2018, Plaintiff may have been aware that there was a "substantial probability" that systemwide, the framing and sheathing behind that siding might need repair.

However, the known loss doctrine requires an insurer to demonstrate *actual* knowledge of the claimed loss, not merely that an insured *should have known* that repairs would be needed. *MKB Constructors*, 49 F. Supp. 3d at 838 (citing *Pub. Util. Dist. No. 1 v. Int'l Ins. Co.,* 124 Wash.2d 789, 881 P.2d 1020, 1031 (1994) ("The Washington Supreme Court has held that an insurer must prove the insured's actual knowledge of a "substantial probability" of a loss in order to bar coverage."). Sara Streeter, who was the President of the Association's board of directors at the time the Association purchased the policy in question, has submitted a sworn declaration, stating without equivocation the following:

ORDER

- 6

> [A]t the time Country's policy was issued, the Association believed the Westboro Condominiums were in good condition. . . .
>
> As of August 19, 2018, I was the President of the Westboro Board of Directors and ***did not know of any damage behind the exterior siding at the Westboro Condominiums, nor did I believe that it was likely that damage to weather resistive barrier, i.e., building paper ("WRB"), sheathing, or framing was occurring behind the siding at the Westboro Condominiums.*** I certainly did not know with a substantial probability that there would be damage to sheathing and framing, especially because I believed that the buildings at the Westboro Condominiums were well-maintained. . . . .
>
> ***Both I and the Association did not know of or anticipate the systemwide damage to sheathing and framing for which the Association brings this lawsuit until after receiving the Evolution Preliminary Report in December 2019*** and Evolution's Building Envelope Investigation Findings Report dated July 3, 2020. I was shocked to receive Evolution's reports as I believed that the Westboro Condominiums were in good condition.

Streeter Decl., ¶¶ 22, 26, 28 (emphasis added). Streeter's belief is apparently based in part on a 2014 report performed by a contractor, which the Association had hired to conduct an independent "assessment of any and all work needed to bring each building up to acceptable standards." *Id.*, ¶ 7; Ex. B. The resulting report stated that the siding was in "average condition" and needed painting, but it did not recommend complete replacement. *Id.*, ¶ 9; Ex. C. According to Streeter, over the following several years the Association performed recommended repairs, after which it believed the buildings were in "good condition." *Id.*, ¶ 22. Like the 2009 and 2018 reserve studies, the 2014 report did not describe any damage to the sheathing or framing.

As the Association points out, its claim against Country is for damage not to the buildings' siding, but to the sheathing and framing hidden behind that siding (and weather resistive barrier). According to Plaintiff, the studies on which Defendants rely (1) were based on visual inspections, not intrusive examinations necessary to ascertain the condition of the sheathing and framing

ORDER

- 7

hidden behind the buildings' siding; (2) were not conducted by qualified building envelope experts; and (3) recommended repair of the buildings' siding, but did not address the condition of the sheathing or framing behind that siding. *See* (1) Streeter Decl., ¶ 6, Ex. A; Eggert Decl., ¶ 12; (2) Eggert Decl., ¶ 11 ("reserve studies are based only on visual inspections and are prepared by individuals who are not experienced building envelope inspectors."); (3) Streeter Decl., ¶¶ 19, 23. Furthermore, the Association's knowledge *in 2009* of water damage behind the siding "in several areas" is not dispositive of whether the Association had knowledge of systemic damage in August 2018, particularly where the evidence shows that between 2009 and 2018, the Association assessed owners a total of over $400,000, and performed at least "limited siding repair and/or maintenance as needed at the buildings." Streeter Decl., ¶¶ 12–13. It is therefore plausible that the Association (and the president of its board of directors) believed as of August of 2019 that the damage observed in 2009 had been repaired.

Streeter's sworn statements directly contradict Country's claim that as of August 2018 the Association had "actual knowledge" of the "substantial probability" of damage to the framing and sheathing of the Westboro buildings, and thus raise an issue of fact on Country's known-loss doctrine affirmative defense. Defendants' Motion for Summary Judgment is therefore denied.

### D. Plaintiff's Motion for Summary Judgment\

#### 1. Legal Framework for Determining Whether Coverage Exists

"Interpretation of language in an insurance policy is a question of law." *Vision One, LLC v. Philadelphia Indem. Ins. Co.*, 174 Wn.2d 501, 512 (2012). All-risk policies, such as the one at issue in this case, provide coverage for all risks unless a risk is explicitly excluded. *See Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 378 (1996) (noting that in an all-risk policy, "any peril that

ORDER

- 8

is not specifically excluded in the policy is an insured peril").

Determining whether coverage exists under such a policy is a two-step process. *McDonald v. State Farm Fire & Cas. Co.*, 119 Wn.2d 724, 731 (1992). First, the insured bears the burden of showing that its loss falls within the scope of the policy's insured losses. *Id*. If such a showing is made, the insurer can avoid coverage only by showing that "the loss is excluded by specific policy language." *Id*. Accordingly, the Court's job is to characterize the perils that allegedly contributed to the claimed loss, and then determine which perils the policy covers and which it excludes. *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 79 Wn. App. 368, 374 (1995), *as amended on denial of reconsideration* (Nov. 27, 1995). The rule that ambiguities are construed in favor of the insured "applies with added force to exclusionary clauses[.]" *Findlay*, 129 Wn.2d at 374.

2. *Whether the Policy Provides Coverage for Damage Caused by Wind-Driven Rain*

Within the context of this framework, Plaintiff seeks summary judgment on several discrete issues. First, the Association asks the Court to declare that the Country policy "covers because it does not exclude damage from wind-driven rain," a peril that Plaintiff has alleged is at issue in this case. Pl.'s Mot. at 9-11. The Association contends that weather conditions that are not explicitly excluded by the policy are covered, and that the kinds of weather conditions that are explicitly excluded are not at issue in this case (*e.g.* weather conditions that cause landslides, mine subsidence, floods, and the like). *Id*. (citing Stein Decl., Ex. D, at 116-17, ¶ 6.3.a.). The Association also argues that certain other exclusions in the policy do not "swallow"—in other words, are distinct from—the wind-drive rain peril it claims here. For example, the Association argues that "the [c]ontinuous or repeated seepage or leakage of water, or the presence or

ORDER

- 9

condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more," and "interior rain," are excluded perils that are distinct from wind-drive rain.

Although Country apparently asserted in its denial letter that certain exclusions in the policy swallowed coverage for wind-driven rain, it wisely does not do so in response to the Association's motion. Multiple cases in this District and in Washington state courts have held that wind-driven rain and other weather conditions, that are not explicitly excluded, are distinct covered perils under substantially similar all-risk policies. *See, e.g., The Ridge and Riverview Homeowner's Ass'n v. Country Cas. Ins. Co.*, 2023 WL 22678, at *5 (W.D. Wash. Jan. 3, 2023); *Franssen Condo. Ass'n of Apartment Owners v. Country Mut. Ins. Co.*, 2022 WL 10419015, at *8 (W.D. Wash. Oct. 18, 2022); *Sunbreaker Condo. Ass'n v. Travelers Ins. Co.*, 79 Wn. App. 368, 377-78 (1995) ("The policy's structure and language both support a characterization of wind-driven rain as a peril which is distinct from 'continuous or repeated seepage . . . that occurs over a period of 14 days or more.'"). Thus the Court holds that Country's policy provides coverage for damage caused by wind-driven rain or weather conditions not otherwise excluded.[1]

3. Whether Any Exclusions Apply

The second step in the process of evaluating coverage is determining whether any exclusions apply. *McDonald*, 119 Wn.2d at 731. The Association asks the Court to rule as a matter of law that several of the exclusions in the Country policy do not bar coverage in this case. The Court addresses each of these exclusions in turn.

---

[1] Under Washington's efficient proximate cause rule, this is true even if other uncovered perils contributed to the loss. *Sunbreaker*, 79 Wn. App. at 375. To be clear, however, the Court does not hold that wind-driven rain or weather conditions were in fact the cause of the loss here. That issue is for the jury.

ORDER

- 10

a. "Negligent Work" Exclusion

One of the exclusions in the policy at issue is for "negligent work," a peril that has been implicated in this case. *See* Stein Decl., Ex D., Pg. 114-116, ¶ 6.3.c (exclusion for "Faulty, inadequate or defective . . . . : (1) Planning, zoning, development, surveying, siting; (2) Design, specifications, workmanship, repair, construction, renovation, remodeling, grading, compaction; (3) Materials used in repair, construction, renovation or remodeling; or (4) Maintenance; of part or all of any property on or off the described premises."). The Association contends that the exclusion does not bar coverage of its claims and seeks a declaration so stating.

Whether this exclusion applies, and under what circumstances, requires interpretation and application of the inverse efficient proximate cause ("EPC") rule. The EPC rule "operates to permit coverage when an insured peril sets other excluded perils into motion which 'in an unbroken sequence and connection between the act and final loss, produce the result for which recovery is sought.'" *Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 169 (1994) (quoting *Graham v. Public Employees Mut. Ins. Co.*, 98 Wn.2d 533 (1983)). The *inverse* of that rule, under which an insurer would be allowed to *deny* coverage when "an *excluded peril* sets in motion a causal chain that includes covered perils," does not exist at common law. *Hill & Stout, PLLC v. Mut. of Enumclaw Ins. Co.*, 200 Wn.2d 208, 226 (2022) (quoting *Vision One*, 174 Wn.2d at 519). However, Washington courts have held that explicit policy language invoking the inverse EPC rule is enforceable. In particular, if a policy provides that a peril will be excluded if it "initiates the causal chain and is itself either the sole proximate cause or the efficient proximate cause of the loss," the inverse EPC rule may be used to deny coverage. *Id*. (recognizing "the possibility that an insurer may draft policy language to deny coverage when an excluded peril initiates an unbroken

ORDER
- 11

causal chain") (citation omitted).

The question that arises here is whether Country's policy contains an effective inverse EPC provision. The policy is modified by a "Washington Endorsement," which contains two competing and conflicting prefatory clauses, both of which purport to modify to the negligent work exclusion; one clause contains the inverse EPC rule language approved by the Washington Supreme Court in *Hill & Stout*; the other clause contains language that would not trigger the inverse EPC rule. *Compare* Stein Decl., Ex. D, at p. 114, ¶ A.2. ("We will not pay for loss or damage . . . caused by [negligent work, *inter alia*] if the occurrence of that event: a. Directly and solely results in loss or damage; or b. Initiates a sequence of events that results in loss or damage, regardless of the nature of any intermediate or final event in that sequence") with *id.*, at p. 115, ¶ A.6. ("We will not pay for loss or damage caused by or resulting from any [negligent work, *inter alia*]. But if an excluded cause of loss . . . results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss."). Not surprisingly, each party urges adoption and application of the clause that produces the outcome it favors.

Fortunately, this Court has recently ruled on the legal interplay of these exact provisions contained in Country's policies, arriving at the same conclusion at least twice in just the last three months. *See Franssen*, 2022 WL 10419015, at *10; *Ridge and Riverview*, 2023 WL 22678, at *6-11. After careful analysis, the Court concluded in those cases that the two introductory clauses give rise to an unavoidable conflict. Adopting the interpretation favoring the insured, as required under Washington law, the Court held "the Country Mutual Policies do not exclude coverage for damage resulting from a chain of causation initiated by negligent work":

Given these seemingly conflicting provisions, it is ambiguous whether the Country

ORDER

- 12

Mutual Policies contain language specifically excluding coverage for damage resulting from a chain of causation initiated by negligent work. The Washington Supreme Court has repeatedly recognized that if the interpretation of an insurance policy is "fairly susceptible of two different conclusions, the one will be adopted most favorable to the insured." Where exclusions are concerned, as is the case here, the principle of resolving ambiguities in the insured's favor "applies with added force." Therefore, consistent with this well-established principle, the Court finds that the Country Mutual Policies do not contain such language.

Given that negligent work is an excluded peril, the damage resulting from a causal chain initiated by negligent work would only be excluded if the policy had contained language specifically requiring such exclusion. It does not. Accordingly, the Court hereby rules that if the jury determines that damage resulted from a causal chain that was initiated by negligent work and includes one or more covered perils (e.g., covered "weather conditions"), then the Country Mutual Policies cover that damage.

*Franssen*, 2022 WL 10419015, at *10 (citing *McLaughlin v. Travelers Com. Ins. Co.*, 196 Wn.2d 631, 643 (2020); *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 126 Wn.2d 50, 83 (Wn. 1994)).

The Court sees no reason to depart from this sound conclusion in this case, and therefore again holds that "if the jury determines that damage resulted from a causal chain that was initiated by negligent work and includes one or more covered perils (*e.g.*, covered 'weather conditions')" the policy here covers that damage. *Ridge and Riverview*, 2023 WL 22678, at *10 (quoting *Franssen*, 2022 WL 10419015, at *10).

b.  Exclusion for Repeated Seepage/Moisture

As noted *supra*, § II.D.1., wind-driven rain (on the one hand) and "the [c]ontinuous or repeated seepage or leakage of water, or the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more" (on the other) are two distinct and separate perils. The first is covered under the policy; the second is not. The question remains whether the

ORDER

- 13

latter peril could apply under the facts of this case to justify the denial of coverage.

According to the Association, the exclusion is inapplicable to its claims as a matter of law, for several reason. First, it posits that because the parties' experts "agree that there were no wind-driven rain events during Country's policy period that lasted for a period of 14 days or more," the exclusion cannot apply. Pl.s' Mot. at 13. Second, the Association argues that the "moisture" provision of the exclusion is inapplicable because the operating definition of "moisture" is "liquid diffused or condensed in relatively small quantity," and the experts agree that the damage at issue was not caused by a "small quantity" of water. Pl.'s Mot. at 13-14 (citing Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/moisture). Third and finally, the Association claims that Country's expert admitted he could not prove that moisture caused the damage at Westboro. On closer examination, all of these arguments fail.

First, nothing in the exclusion requires that a single wind-drive rain event must have lasted 14 days or more for the exclusion to apply. As noted above (and in fact argued by the Association), wind-drive rain and seepage are distinct perils. Thus, the mere absence of a 14-day storm during the policy period does not necessarily establish the absence of a 14-day seepage event. The Association misreads authority that it claims stands for the proposition that the seepage/moisture exclusion can never apply to damage caused by wind-driven rain. The court in *Sunbreaker*, for example, observed that "the seepage exclusion relates to a long term event ("a period of 14 days or more") which is not commonsensically associated with a weather condition." 79 Wn. App. at 378. It did so, however, in the context of whether as a matter of law, seepage was a peril distinct from others alleged to have caused damage; whether seepage actually caused the damage at issue in that case—and whether the seepage exclusion therefore applied—was a

ORDER

- 14

1  question for the jury. *Sunbreaker*, 79 Wn. App. at 380 ("a reasonable juror could conclude that

2  defective design, defective materials, repeated seepage or leakage, and/or fungus efficiently

3  caused Sunbreaker's loss."). Similarly, the court in *Eagle Harbour* stated "'repeated seepage of

4  water' does not *necessarily* include decades of storm events," and held "wind-driven rain is a

5  peril distinct from repeated water seepage." *Eagle Harbour Condo. Ass'n v. Allstate Ins. Co.*,

6  2017 WL 1316936, at *4 (W.D. Wash. Apr. 10, 2017) (emphasis added). But that court, too, left

7  the question of whether the exclusion actually applied in that case for the jury. *Id*., *5 (denying

8  motions for summary judgment "[b]ecause a reasonable juror could conclude inadequate

9  construction or latent defects, repeated seepage of water, rot or deterioration, or wind-driven rain

10  efficiently caused the Association's loss").

　　　　As to the second argument, the Court outright rejects the Association's proposed
sophistry. The word "moisture" is not synonymous with "a small quantity of water." The
definition of "moisture" offered by the parties is "liquid *diffused or condensed* in *relatively* small
quantity." Pl.s' Mot. at 14 (citing Merriam-Webster Online Dictionary at https://www.merriam-webster.com/dictionary/moisture) (emphases added). The "small quantity" of liquid is not small
in absolute terms, as the Association suggests; it is "small" *relative to* the material through which
it is diffused or condensed—as alleged in this case, the damaged wood framing and sheathing.
Country's expert's "admission" in deposition that a small quantity of water did not cause the
damage at issue does not establish that moisture did not cause the damage.

　　　　And third, while it is Country's burden to prove that the seepage/moisture exclusion
applies, the record before the Court contains sufficient factual allegations for a reasonable jury to
find that moisture caused—that is, either "solely and directly caused," or "initiated a sequence of

ORDER
- 15

events" that caused—the claimed damage at issue. In deposition, Country's expert testified as follows:

> Q. So you can't identify what specific damage was the result of moisture over a period of 14 days or more? Is that what you're saying? . . .
>
> A. I think all of it was a result of moisture intrusion for a period of 14 days or more. . . .
>
> Q. What -- how are you able to prove that there was moisture behind the siding for a period of 14 days or more?
>
> A. I can't prove it. That's just my opinion.

Syhre Decl., Ex. H, Christopher Hasse Dep. at 73:24–74:4; 76:5-8. This testimony alone raises a triable issue of fact as to whether "the presence or condensation of humidity, moisture or vapor, that occurs over a period of 14 days or more" caused the damage at Westboro. The Court agrees with the Association that the seepage/moisture exclusion does not "swallow" coverage for wind-driven rain, as the two perils are distinct. Whether one, both, or neither of these perils caused the claimed damage, however, is an issue for the jury to decide.

> 4. *Whether the Association Has Demonstrated that Country Is Liable for the Entire Incremental and Progressive Loss Caused by Wind-Driven Rain*

Finally, the Association asserts that if it can show that new damage from wind-driven rain occurred during the policy period, coverage is triggered under the "commencing condition" provision, which states the insurer will pay for "loss or damage commencing during the policy period." Pl.'s Mot. at 27 (citing Stein Decl., Ex. C, pg. 18; *Sunwood Condo. Ass'n v. Travelers Cas. Ins. Co. of Am.*, 2017 WL 5499809, at *5 (W.D. Wash. Nov. 16, 2017)).  The Association further states that under Washington's "continuous trigger" rule, Country is jointly and severally

ORDER
- 16

liable for any incremental damage if the Associations can prove that some damage, "however minute," occurred during that period. Country does not dispute these propositions, which appear to be a matter of settled law. *See Franssen*, 2022 WL 10419015, at *11 ("[I]n the event the jury determines that the Condominium suffered progressive and incremental weather-related damage that was ongoing during Travelers' and Country Mutual's policy periods, they will be jointly and severally liable for all of that damage.").

Country does object, however, to the additional step Plaintiff urges. The Association claims that—setting aside the disputed issue of cause— it has shown, as a matter of law, that some new incremental and progressive damage did in fact occur during the policy period. The Association claims that "it is undisputed that damage at Westboro was incremental and progressive since shortly after initial construction and that there was new incremental and progressive damage from rainwater to sheathing and framing during Country's policy period." Pl.'s Mot. at 20 (citing Eggert Decl., ¶¶ 9-19; Stein Decl., Exs. R-S, U, M). It thus seeks a ruling that if it can prove that the damage was caused by wind-driven rain, that damage is covered as a matter of law.

Country denies the matter is undisputed, and argues that whether a new loss commenced during the policy period is a question that must be left to the jury. It is true that whether an insured can prove instances of new damage or loss during the policy period is typically a question of fact for the jury. *See, e.g., Eagle Harbour*, 2017 WL 1316936, at *6 ("It is for the jury to decide whether each storm event operated like a rock hitting and cracking an already cracked windshield, or whether they had no new effect, and instead the water damage operated like a single crack on a windshield that simply elongated over time."). In this case, however, the

ORDER

- 17

Association is correct; Country's expert clearly testified that damage from water occurred "each year," starting "approximately when the buildings were built":

> Q. In your opinion, would the damage at the Westboro Condominiums from water continue each year?
>
> A. Yes. Much of it was long-term and ongoing.
>
> Q. And would the damage get worse every year as well?
>
> A. Yes. Most of it, yes.

Stein Decl., Ex. R, Hasse Dep. at 39:22-40:2. Elsewhere, Country's expert testified:

> Q. So on a more probable than not basis, some damage behind the siding at this location occurred between [August] 2018 and 2019; is that correct?. . .
>
> A. I would say that's correct. *Id.*, Ex. U, Hasse Dep. 52:5-12.

Country does not even to attempt to explain how this testimony is not dispositive of the factual issue it claims must go to the jury, and in fact acknowledges its expert's "general assumption that the damage got somewhat worse during" the policy period. Def.'s Opp. at 16. Nor has Country proffered any evidence that would at least cast doubt on the expert's testimony. The Court therefore concludes that "no genuine dispute exists as to whether 'new' damage occurred during the policy period[]," and holds that "if a jury finds that damage occurred from the combination of weather conditions and negligent work, Country Casualty is liable—jointly and severally with any other insurers who covered such damage—for all the incremental hidden weather damage." *Ridge at Riverview*, 2023 WL 22678, at *13-14.

///
///

ORDER

- 18

## IV. CONCLUSION

For the foregoing reasons:

Plaintiff's Motion for Sanctions is DENIED;

Defendants' Motion for Summary Judgment is DENIED;

Plaintiff's Motion for Summary Judgment is DENIED in part and GRANTED in part, as follows:

(1) the weather conditions at issue in this case are a distinct and covered peril under the policy;

(2) Plaintiff is not entitled at this stage to a declaration that, as a matter of law, the seepage exclusion does not apply to exclude coverage for the damage claimed in this case;

(3) the policy does not exclude coverage for damage resulting from a chain of causation initiated by negligent work; and

(4) if a jury finds that damage occurred from the combination of weather conditions and negligent work, Country is liable—jointly and severally with any other insurers who covered such damage—for all the incremental hidden weather damage.

DATED this 11th day of January, 2023.

*Barbara J. Rothstein*
Barbara Jacobs Rothstein
U.S. District Court Judge